IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIRGINIA B. HALL, | : | CIVIL ACTION |
| | : | NO. 13-6563 |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-2257 |
| | : | |
| NATIONSTAR MORTGAGE, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          July 6, 2015


        Plaintiff Virginia B. Hall ("Plaintiff") brings two
actions against Nationstar Mortgage, LLC, Champion Mortgage
Company, Champion Mortgage, and unnamed representatives thereof
("Defendants"). In the first action (No. 13-6563), Plaintiff
alleges that Defendants violated the Fair Debt Collection
Practices Act ("FDCPA") through misleading statements in a
letter involving a foreclosure notice. In the second action (No.
14-2257), Plaintiff alleges that Defendants violated the FDCPA
by directly contacting her with respect to a debt despite
knowing that she was represented by counsel. Defendants have
moved for summary judgment on both actions. For the reasons that

follow, the Court will deny the motion as to both actions, but will sua sponte dismiss the second action without prejudice.

## I.   BACKGROUND

In 2009, Charles Pirrone executed a reverse mortgage loan ("the Loan") for his Philadelphia home ("the Property"). See Open-End Mortgage, Pl.'s Resp. Ex. A, ECF No. 34-4.[1] Less than two years later, in March 2011, Pirrone passed away and his daughter, Plaintiff, became executrix of his estate ("the Estate"). Hall Dep. 18:9-20:10, Aug. 12, 2014, Pl.'s Resp. Ex. B, ECF No. 34-5 [hereinafter Hall Dep.]. The Property was the primary asset of the Estate, and Pirrone's will left it entirely to Plaintiff. Hall Dep. 27:5-28:10.

In April 2013, Defendants, doing business as Champion Mortgage, sent Plaintiff a Notice of Intention to Foreclose Mortgage. See Pl.'s Resp. Ex. C, ECF No. 34-6 [hereinafter Act 6 Notice]. Such a letter – called an "Act 6 notice" – is a mandatory prerequisite to the initiation of the foreclosure of a residential mortgage in Pennsylvania. 41 P.S. § 403. The Act 6 Notice informed Plaintiff that the Property was in default due to the death of Pirrone, and warned her that if she did not timely cure the default, her mortgaged could be foreclosed. Act

---

[1] Unless otherwise noted, all references to docket numbers are from case number 13-6563, the Class Action.

6 Notice at 1-2. If that occurred, the Act 6 Notice said, there would be a Sheriff's sale terminating Plaintiff's ownership of the Property:

> If you have not cured the default within the thirty day period, and foreclosure proceedings have begun, <u>you will still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's foreclosure sale. You may do so by paying the total amount of the unpaid monthly payments plus any late charges, charges then due, as well as the reasonable attorney's fees and costs connected with the foreclosure sale (and perform any other requirements under the mortgage)</u>. It is estimated that the earliest date that such Sheriff's Sale could be held would be approximately THREE (3) MONTHS FROM THE DATE OF THIS LETTER. A notice of the date of Sheriff's Sale will be sent to you before the sale.

<u>Id.</u> at 2 (emphasis in original). The Act 6 Notice also said, "FEDERAL LAW REQUIRES US TO ADVISE YOU THAT THIS FIRM IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT." <u>Id.</u> After receiving the Act 6 Notice, Plaintiff was concerned about the possibility of foreclosure, so she took the Notice to Freedman & Grinshpun, the attorneys who were representing the Estate. Hall Dep. 18:25-19:13, 47:9-15, 55:17-56:14.

On June 13, 2013, Defendants filed an action of mortgage foreclosure against Plaintiff in the Court of Common Pleas of Philadelphia County ("Foreclosure Litigation"). Action of Mortgage Foreclosure, Defs.' Mot. Summ. J. Ex. H, ECF No. 31-3. Freedman & Grinshpun is defending Plaintiff in the Foreclosure Litigation. Hall Dep. 35:5-13.

Plaintiff filed a counseled Complaint ("Class Action") – civil action no. 13-6563 – on November 12, 2013. ECF No. 1. She brought the suit as a class action, alleging two claims: (1) violations of the Fair Debt Collection Practices Act ("FDCPA") and (2) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Plaintiff later orally withdrew the latter claim, leaving only the FDCPA claim. See Hr'g Tr. 3:15-4:2, 49:14-19, Apr. 2, 2014, ECF No. 24 [hereinafter Hr'g Tr.].

While the Class Action was pending, on February 6, 2014, and March 31, 2014, Defendants sent two letters to the Estate, notifying the Estate of the default of the Loan and providing options for curing the default. Defs.' Mot. Summ. J. Exs. I and J, ECF No. 31-3.

Defendants filed a motion to dismiss the Class Action (ECF No. 13), which the Court denied after a hearing. See Hr'g Tr. 49:3-9; ECF No. 22. The Court also indicated that Defendants could file a motion for summary judgment as to Plaintiff's claims, and if that motion was denied, the parties would then proceed to class discovery. Hr'g Tr. 47:21-48:23. Thereafter, Plaintiff also filed a related case ("Individual Action") – civil action no. 14-2257 – based on Defendants' letters to the Estate during the pendency of the Class Action. Her Complaint in

the Individual Action alleges one claim of violations of the
FDCPA.

On September 2, 2014, Defendants moved for summary
judgment on both cases. Plaintiff responded on October 15, 2014,
and Defendants filed a reply brief on October 30, 2014.[2] The
motion is now ripe for disposition.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Anderson, 477 U.S. at
248.

The Court will view the facts in the light most
favorable to the nonmoving party. "After making all reasonable

---

[2]     The parties addressed both cases in their filings; the
Court will do the same in this opinion.

inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal quotation marks omitted).

## III. DISCUSSION

### A.  Class Action (No. 13-6563)

Plaintiff claims that the Act 6 Notice was false, deceptive, or misleading under the FDCPA because it stated: "It is estimated that the earliest date that such Sheriff's Sale could be held would be approximately THREE (3) MONTHS FROM THE DATE OF THIS LETTER." Act 6 Notice. According to Plaintiff, because of the particular practices of the Philadelphia Sheriff's Office, Sheriff's sales in Philadelphia County never occur more than 131 days – or nearly 4.5 months – after an Act 6 notice is sent.[3] Am. Compl. ¶ 36, ECF No. 12. Therefore, Plaintiff says, the Act 6 Notice "generated a false sense of

---

[3]      Plaintiff's purported class in the Class Action extends beyond Philadelphia County to Bucks, Chester, Delaware, and Montgomery Counties. Am. Compl. ¶ 38.

urgency and confusion," and thus violated the FDCPA. Id. at ¶ 50.

Defendants argue that their three-month estimate cannot be misleading under the FDCPA because the estimate was an accurate statement of Pennsylvania law, Defs.' Mem. Law 12-18, ECF No. 31-2, and the least sophisticated debtor could not be misled by the Act 6 Notice, id. at 21-24.

1.   Legal Standard

"The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232 (3d Cir. 2005). One of the FDCPA's basic tenets "is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner." F.T.C. v. Check Investors, Inc., 502 F.3d 159, 165 (3d Cir. 2007) (quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)) (internal quotation marks omitted). As such, the statute prohibits a debt collector from using certain collection methods to collect a debt from a consumer. Id. at 166. The prohibited methods include, among other things, "any false, deceptive, or misleading representation." 15 U.S.C. § 1692e.

7

To determine whether or not a defendant's communications were false, deceptive, or misleading, courts must apply the "least sophisticated debtor" standard, which is intended to ensure "that the FDCPA protects all consumers, the gullible as well as the shrewd." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)). Under this standard, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor," because "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006). However, the least sophisticated debtor standard still "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Wilson, 225 F.3d at 354-55 (quoting Nat'l Fin. Servs., 98 F.3d at 136) (internal quotation marks omitted). Ultimately, "[a] debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" Brown, 464 F.3d at 455 (quoting Wilson, 225 F.3d at 354).

2.   <u>Analysis</u>

Defendants reached their three-month estimate by
totaling the following requirements of Pennsylvania law:

(1)   A residential mortgage lender must notify the
      residential mortgage debtor of its intention to
      initiate a foreclosure action at least <u>thirty</u>
      <u>days</u> before commencing such an action. 41 P.S.
      § 403(a).

(2)   The lender may then file a mortgage foreclosure
      complaint, and the debtor has <u>twenty days</u> to file
      responsive pleadings. Pa. R. Civ. P. 1026(a).[4]

(3)   If the debtor does not answer the complaint, the
      lender must send the debtor a notice of intention to
      seek a default judgment, wait <u>ten days</u>, then file
      a praecipe for default judgment. Pa. R. Civ. P.
      237.1(a)(2).

(4)   After judgment is entered, the lender must obtain a
      writ of execution directing the Sheriff to proceed to
      a sale. Pa. R. Civ. P. 3102. The Sheriff must then
      provide notice in several ways, including by posting
      handbills "in the sheriff's office and upon the
      property at least <u>thirty days</u> before the sale." Pa. R.
      Civ. P. 3129.2(b) (emphasis added).

<u>See</u> Defs.' Mem. Law 16-17. The minimum time in which these
requirements could be completed is ninety days – hence
Defendants' estimate of three months.

Plaintiff does not contest this conclusion, nor do
Defendants contest Plaintiff's conclusion that in Philadelphia
County, based on the practices of the Sheriff's Office, a

---

[4]        "Except as otherwise provided[,] . . . the procedure
in [an action to foreclose a mortgage] shall be in accordance
with the rules relating to civil action." Pa. R. Civ. P.
1141(b).

Sheriff's sale is unlikely to occur within 131 days of an Act 6 notice, rather than within three months (or 90 days). However, Plaintiff does insist that it is not merely unlikely for a sale to occur within 131 days of an Act 6 notice, but in fact, that one "can never take place" within less time due to "various non-waivable statutory and regulatory deadlines." Pl.'s Resp. 4, ECF No. 34. In support of this assertion, Plaintiff has produced a one-page document entitled "Mortgage Sale Last Filing Dates 2013." Pl.'s Resp. Ex. G, ECF No. 34-10. There are two columns: "Sale Date" and "Last Filing Date." From this document, it appears that the Philadelphia County Sheriff's Office conducts Sheriff's sales on one day per month, and each date has a corresponding deadline for paperwork. For example, in 2013, in order to hold a Sheriff's sale on December 3, all paperwork needed to be filed by September 16. This is a delay of 78 days – 48 more than the 30 required by Pennsylvania law, as discussed above.

In other words, the "statutory and regulatory deadlines" to which Plaintiff refers are the same deadlines, as discussed above, that Defendant used to create the three-month estimate. Plaintiff simply points out that the Sheriff's Office waits for an additional period of time – in 2013, it was at least 41 additional days above the legal minimum – to hold a Sheriff's sale. Accordingly, Plaintiff's statement that the

10

three-month estimate was "a month earlier than what . . . was legally permissible," Pl.'s Resp. 23, is incorrect. It would be legally permissible for the Sheriff's Office to hold a sale after 90 days, were all necessary legal steps taken immediately. In actual practice, however, the Sheriff's Office does not hold sales as quickly as it is legally permitted to do – at least not in 2013, when Plaintiff received her Act 6 Notice.

To put it another way, it is indisputable that Defendants' three-month estimate is correct in the literal sense under Pennsylvania law; the Sheriff's Office is allowed to hold sales within 90 days. But it is unlikely – at best – to do so under its existing practices. Under these circumstances, there is no genuine dispute of material fact, and the sole question is whether a statement that is technically accurate, but factually unlikely based on the practices of the Sheriff's Office, can mislead the least sophisticated debtor.

Plaintiff relies on Brown, in which the debt collector sent the debtor a letter demanding payment of a delinquent credit card balance. 464 F.3d at 451-52. The letter stated, in relevant part, "Refusal to cooperate could result in a legal suit being filed for collection of the account. You now have five (5) days to make arrangements for payment of this account. Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue

11

collection efforts." Id. The debtor alleged in her suit against the debt collector that these statements were misleading, because while the debt collector could pursue legal action against the debtor, it never actually intended to. Id. at 452. The Third Circuit agreed that such a statement could be deceptive, determining that "the least sophisticated debtor might get the impression that litigation or referral to a . . . lawyer would be imminent if he or she did not respond within five days." Id. at 455. Therefore, the court concluded, "it would be deceptive under the FDCPA for [the debt collector] to assert that it could take an action that it had no intention of taking and has never or very rarely taken before." Id.

Plaintiff urges that the result of Brown requires a decision in her favor as well. However, the cases are not precisely similar. In Brown, which was still at the motion to dismiss stage, the case revolved around the factual question of whether the debt collector intended to take the action it asserted it could take – because the answer to that question determined whether its statement was misleading. That is, assuming that the plaintiff's factual allegations were true, the least sophisticated debtor could have been misled by the Brown letter because the debt collector invented an imminent, illusory deadline in order to reinforce the impression that the threatened legal action was a real possibility. Here, in

contrast, there is no evidence in the record that Defendants did not intend to pursue a Sheriff's sale as soon as it was legally permissible – provided, of course, that the Sheriff's Office scheduled a sale within that timeline.[5]

However, as in <u>Brown</u>, Defendants <u>did</u> assert the possibility of something that simply was not going to occur, even if it could technically occur. The least sophisticated debtor might reasonably read the Act 6 Notice to mean that a Sheriff's sale could occur within three months. Because that would be untrue as a factual matter – a Sheriff's sale was not going to occur within three months, according to the Sheriff's Office 2013 schedule – the letter could "be reasonably read to have two or more different meanings, one of which is inaccurate." <u>Brown</u>, 464 F.3d at 455 (quoting <u>Wilson</u>, 225 F.3d at

---

[5]     For this reason, this case is also distinguishable from cases where a debt collector threatens that action will be taken within a certain time period, even though legal restrictions actually preclude the action from being taken during that time period. It is clear that such communication violates the FDCPA. 15 U.S.C. § 1692e(5) (a "threat to take any action that cannot legally be taken or that is not intended to be taken" is a violation). <u>See also, e.g.</u>, <u>Graziano v. Harrison</u>, 950 F.2d 107, 111 (3d Cir. 1991) (debt collector violated § 1692e by threatening to sue within ten days when he could not legally sue within thirty); <u>Crossley v. Lieberman</u>, 868 F.2d 566, 571 (3d Cir. 1989) (debt collector violated § 1692e by threatening to sue within a week when he legally could not). Here, there are no legal limitations precluding Defendants' three-month estimate – only practical restrictions. In other words, Defendants did not threaten to take an action that could not legally be taken.

354) (internal quotation marks omitted). Here, as in Brown, the Federal Trade Commission's commentary ("FTC Commentary") to the FDCPA is persuasive:[6]

> The FTC Commentary observes that a debt collector "may state that a certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts," but where the debt collector "has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading." 53 Fed. Reg. 50097, 50106 (1988).

Id. While the disputed language in this case involves the timeline for an action and not the action itself, the FTC's logic remains compelling. It may be technically true that a 90-day timeline is legally possible, but Defendants – who could easily request the schedule from the Sheriff's Office in the process of creating its estimates – had reason to know that such a timeline was unlikely, at best. Because the least sophisticated debtor could read from the Act 6 Notice that a Sheriff's sale might occur within three months, which was inaccurate, the statement was deceptive under the FDCPA.[7]

---

[6]     "[T]he FTC Commentary does not have the force of law and is 'not entitled to deference in FDCPA cases except perhaps to the extent [its] logic is persuasive.'" Brown, 464 F.3d at 455 (quoting Dutton v. Wolpoff & Abramson, 5 F.3d 649, 654 (3d Cir. 1993)). In the context of this case, it is persuasive.

[7]     On June 4, 2015, Defendants submitted a letter to the Court, ECF No. 36, highlighting the recent decision in Burton v. Nationstar Mortgage LLC, No. 14-5059, 2015 WL 1636956 (E.D. Pa. Apr. 13, 2015). The Burton court held that in order "[f]or a

14

Defendants argue that the Act 6 Notice cannot be misleading because it fully complied with Pennsylvania law – the sentence at issue comes directly from a model Act 6 Notice created by the Pennsylvania Department of Banking and Securities and provided in the Pennsylvania Code. 10 Pa. Code § 7.4 ("It is estimated that the earliest date that such a Sheriff's sale could be held would be approximately ___."). This model notice is "interpreted as satisfying the requirements of section 403 of [Act 6]." 7 P.S. § 6020-166.

Defendants are overlooking, however, that the core of the disputed portion of the Act 6 Notice – the three-month

---

false statement to be actionable under Section 1692e, that false statement must be materially false or misleading." Id. at *6. Defendants argue that even if their three-month estimate was false, it would not be material, because Plaintiff stated in her deposition that she understood the estimate to be an imprecise statement.

Assuming for the purposes of this motion that Burton correctly determined that a statement must be material in order to be false, deceptive, or misleading under the FDCPA, the statements at issue are indeed material, and so Burton does not alter this Court's decision. A statement is material for the purposes of the FDCPA if it has "the ability to influence a consumer's decision." O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 942 (7th Cir. 2011) (emphasis omitted). Accordingly, whether a statement is material is a matter of law for the court to determine, and the relevant question is not, as Defendants believe, whether Plaintiff herself was influenced by the three-month estimate, but whether a consumer could be influenced by it. Because a consumer's decisions could be influenced by the belief that a Sheriff's sale might occur at least forty days before it could occur in reality, the three-month estimate in this case is material.

estimate – does not implicate the text of the notice, but rather is their own calculation that they placed in the blank provided by the Pennsylvania Code. And, in fact, the very language of the model notice suggests that the called-for estimate is intended to encompass changing realities like the actual timelines for Sheriff's sales, not simply the 90-day statutory minimum. If Pennsylvania intended an Act 6 "estimate" to mean that statutory minimum or baseline, it could have written "90 days" into the model notice. Instead, the model notice calls for the mortgage company to craft its own estimate, suggesting that the debt collector is to take into account factual realities that will affect the likely timeline. Defendants did not do that.

In fact, Defendants' preferred three-month statement is not an estimate or approximation at all – it simply parrots the minimum amount of time required under the law for a Sheriff's sale to occur.[8] The "estimate" therefore has the potential to further mislead the least sophisticated consumer in an additional way. Because the Act 6 Notice estimates that the earliest date the foreclosure sale could occur would be in "approximately" three months, the least sophisticated debtor could have understood that the sale might occur even earlier

---

[8]      A 130-day estimate, for example, would be a true estimate and approximation, as the actual minimum time for a Sheriff's sale to occur varies a bit from month to month, but 130 days was roughly the earliest possible timeline in 2013.

16

than in three months. This is so because the word
"approximately" can be understood to mean near or close to, but
possibly shorter or longer than, the estimate provided.[9] In other
words, by using "approximately" as a modifier, Defendants did
not actually designate the earliest possible date for the sale
to occur, but rather, left the least sophisticated debtor to
wonder how soon prior to three months a foreclosure sale might
occur.[10]

---

[9]     See Approximate Definition, Merriam-Webster,
http://www.merriam-webster.com/dictionary/approximately (last
visited July 2, 2015); JVI, Inc. v. Truckform Inc., No. 11-6218,
2012 WL 6708169, at *19 (D.N.J. Dec. 26, 2012) (noting that the
definition of "approximately" leaves room for a small range of
variance on either side of the approximation).

[10]    Furthermore, there is no blanket legal exception for
estimates or approximations, as Defendants suggest. In a
decision last year, the Third Circuit did suggest that a debt
collector may be able to avoid liability by making clear than an
estimate is indeed merely an estimate:

> The Letter says that it sets forth "[t]he amount of
> the debt as of 05/18/2010." The only message this
> conveys to the reader is the amount owed on a specific
> date. Nothing says it is an estimate or in any way
> suggests that it was not a precise amount. . . . If
> [the debt collector] wanted to convey that the amounts
> in the Letter were estimates, then it could have said
> so. It did not. Instead, its language informs the
> reader of the specific amounts due for specific items
> as of a particular date.

McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 246
(3d Cir. 2014) (citation omitted). See also Kaymark v. Bank of
America, N.A., 783 F.3d 168, 175 (3d Cir. 2015) (noting that,
like the debt collector in McLaughlin, "[the debt collector in
Kaymark] also did not convey that the disputed fees were
estimates or imprecise amounts"). Ultimately, the question
remains whether the least sophisticated debtor could be misled

Accordingly, the least sophisticated debtor could reasonably read the Act 6 Notice here to have several meanings, at least one of which is inaccurate. Therefore, construing the facts in the light most favorable to Plaintiff, Defendants are not entitled to judgment as a matter of law, and the Motion for Summary Judgment will be denied as to the Class Action.

B.   Individual Action (No. 14-2257)

Plaintiff claims that Defendants violated the FDCPA by sending two letters to the Estate in 2014 despite knowing that Plaintiff was represented by counsel. Compl. ¶¶ 42-46, ECF No 1. Defendants argue that Plaintiff does not have standing to bring this claim on behalf of the Estate because she is not a "consumer" as defined by the FDCPA.[11] Defs.' Mot. Summ. J. 25-26.

The FDCPA prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt" if "the debt collector knows the consumer is represented by an attorney with respect to such debt

by the language used. In some cases, to be sure, a clear estimate could not be misunderstood to be anything else. But here, not only is Defendants' 90-day "estimate" not actually an estimate or approximation, but for the reasons discussed above, the least sophisticated debtor could read it to have an inaccurate meaning. Accordingly, Defendants' use of conditional language does not eliminate their liability.

[11]   Defendants also make a separate argument about one of the letters discussed in the Complaint, but Plaintiff says that letter is not part of her claim, so this argument is moot. Pl.'s Resp. 32.

and has knowledge of, or can readily ascertain, such attorney's name and address . . . unless the attorney consents to direct communication with the consumer." 15 U.S.C. § 1692c(a), (a)(2). A consumer is "any natural person obligated or allegedly obligated to pay any debt," § 1692a(3), and the definition includes "the consumer's spouse, parent (if the consumer is a minor), guardian, <u>executor</u>, or administrator," § 1692c(d) (emphasis added).

Nonetheless, Defendants argue that Plaintiff is not a consumer under § 1692c because she "has not sued Nationstar in her capacity as executrix of the Estate but in her individual capacity." Defs.' Mot. Summ. J. 25. In other words, Defendants claim that they are entitled to judgment because Plaintiff has failed to caption her case properly – she is suing simply in her own name, rather than, for example, "as Executrix of the Estate of Charles Pirrone."

In support of this argument, Defendants cite one case from the Eastern District of Pennsylvania, <u>Cole v. Toll</u>, No. 07-0590, 2007 WL 4105382 (E.D. Pa. Nov. 16, 2007), in which the court found that the plaintiffs did not have standing to bring claims on behalf of their father's estate. <u>Id.</u> at *6. However, the court reached that decision not because the plaintiffs failed to style the caption of their case in a way that indicated they were suing on behalf of the estate, as is

Defendants' argument here, but because they had not been appointed as executors of the estate at the time the estate received the communications at issue. Id. at *6. Accordingly, Cole does not stand for the proposition that a plaintiff must technically sue as executor of an estate in order to have standing to bring claims on behalf of the estate.[12]

However, Defendants' position is supported by federal and state civil rules. Under Federal Rule of Civil Procedure 17(b)(3), "capacity to sue is determined by the law of the state where the court is located." Estate of Bayliss v. Wells Fargo Bank N.A., No. 08-2966, 2008 WL 4792446, at *2 (E.D. Pa. Oct. 30, 2008). The Pennsylvania Rules of Civil Procedure allow a plaintiff acting in a representative capacity to sue in her own name – if she discloses that capacity in the caption and in her initial pleading. Pa. R. Civ. P. 2002(b)(1). Plaintiff has not done so here, suing only in her individual capacity.

Therefore, as Virginia B. Hall, individual, rather

---

[12]      Notably, in the cases Plaintiff offers to support her position that she has standing, while it is true that the courts held that executors or administrators had standing to bring claims on behalf of estates, the plaintiffs in those cases originally filed their suits in their representative. See Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647 (6th Cir. 1994) (plaintiff sued as "Executrix of the Estate of Gladys Finch," N.D. Ohio, No. 90-cv-07553-4725); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 176 (W.D.N.Y. 1988) (plaintiff sued "as Administratrix of the Estate of Victor Riveria"). Accordingly, Plaintiffs' cases do not support her position.

than Virginia B. Hall, executrix, Plaintiff is not a consumer for the purposes of § 1692c, and so she has no standing to bring this claim. Cf. Kinkade v. Estate Info. Servs., LLC, No. 11-4787, 2012 WL 4511397, at *4 n.2 (E.D.N.Y. Sept. 28, 2012) (noting that plaintiff did not have standing as an individual "stand[ing] in the shoes of a consumer" because she did not assert her claims on behalf of her husband's estate); Barasch v. Estate Info. Servs., LLC, No. 07-1693, 2009 WL 2900261, at *3 (E.D.N.Y. Sept. 3, 2009) (holding that plaintiff had "disclaimed reliance" on her ability to establish standing as executrix of an estate because she sued only in her individual capacity, even after a magistrate judge entered an order instructing her to amend the case caption if she sought to sue on behalf of the estate).

Because Plaintiff lacks standing, the Court has no subject matter jurisdiction over this claim. Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997). Under these circumstances, the claim must be dismissed without prejudice, as a dismissal for lack of subject matter jurisdiction is inherently without prejudice. See Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 182 (3d Cir. 1999). Therefore, the Court will deny the Motion for Summary Judgment, but will sua sponte dismiss the case without prejudice.

**IV.   CONCLUSION**

      For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment as to both the Class Action and the Individual Action, but will sua sponte dismiss the Individual Action without prejudice.